**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| PRINCIPAL LIFE INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C. A. No. 08-488-MPT |
| | : | |
| LAWRENCE RUCKER 2007 | : | |
| INSURANCE TRUST, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM ORDER**

**I. INTRODUCTION**

    The court now considers the Motion for Reargument (D.I. 157) submitted by

defendant Lawrence Rucker 2007 Insurance Trust (the "Insurance Trust") under Local

Rule 7.1.5.  Insurance Trust's Motion seeks reargument of this court's August 30, 2010

memorandum opinion and order (D.I. 155 and 156) granting summary judgment to

plaintiff Principal Life Insurance Company ("Principal") on Count I of its Amended

Complaint asserting lack of insurable interest.  For the reasons that follow, Insurance

Trust's Motion is denied.

**II. BACKGROUND[1]**

    Principal claims that the life insurance policy (the "Policy") issued on the life of

Lawrence Rucker ("Rucker") was obtained illegally through a stranger originated life

insurance ("STOLI") scheme.  Such schemes are frequently used to gamble on the lives

---

    [1]  As a complete recitation of the relevant facts appears in the court's summary
judgment opinion (D.I. 155 at 2-5), only a brief summary follows.

of strangers and profit from their deaths.  Principal argues that a multi-layer trust arrangement was used to circumvent Delaware's insurable interest statute.[2]

Rucker began the process of obtaining life insurance through interactions with Wayne Aery ("Aery").  Aery and his associates assisted Rucker in completing the application for life insurance and in establishing various trusts, including the Insurance Trust and the Lawrence Rucker 2007 Family Trust (the "Family Trust").[3]  When the Policy issued, Rucker was sole beneficiary of the Family Trust, the Family Trust was sole beneficiary of the Insurance Trust, and the Insurance Trust was sole beneficiary of the Policy.

Shortly after issuance of the Policy, the Family Trust sold an "exclusive, undivided 100% beneficial interest" in the assets of the Insurance Trust to the GIII Accumulation Trust (the "GIII Trust").[4]  The GIII Trust is a Delaware statutory trust that can only purchase beneficial interests in life insurance trusts, and can only make offers to purchase such interests when instructed to do so by its beneficiary, which at the

---

[2] *See generally* 18 Del. C. § 2704(a) ("Any individual of competent legal capacity may procure or effect an insurance contract upon his/her own life or body for the benefit of any person, but no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his/her personal representatives or to a person having, at the time when such contract was made, an insurable interest in the individual insured.").

[3] *See* D.I. 117, Gosselin Aff., Ex. A at 53 (Rucker testifying that "Wayne filled out most of the–a great part of the application."); *id.* at 62-63 (Rucker testifying that "[Aery] did this–This was done at my house, this, all this . . . .  He would give me papers and read and ex–and I would question him on certain items . . . ."); *id.* at 66 ("Q:  Okay.  And did you establish a trust to purchase this insurance policy?  A:  No.  I haven't–I have no idea–They presented that to me:  'We had to establish a trust for you,' a family trust I think they called it.  I said, 'All right.'").

[4] D.I. 117, Gosselin Aff., Ex. L.

relevant time was an entity called Dariconic Limited.[5]  Although the Insurance Trust remains the named beneficiary of the Policy, the GIII Trust is the actual beneficiary and will receive all Policy proceeds according to this agreement.  The GIII Trust has no insurable interest in Rucker's life.

It is undisputed that Rucker always intended to sell the beneficial interest in the Policy, with Aery's help, for $105,000.[6]  It is also undisputed that Rucker and Aery had a pre-negotiated agreement to transfer the beneficial interest in the Policy, but for which Rucker would not have applied.[7]

## III.  LEGAL STANDARD

Reargument under this court's local rules "attempts to balance the interests in obtaining a final decision on matters presented to the Court and the recognition that the Court, like all others, is capable of mistake and oversight."[8]  Well-grounded motions for reargument thus "present the court with an opportunity to correct erroneous rulings."[9]

Such motions are granted sparingly, however, and in narrow circumstances.[10]  A

---

[5]  D.I. 117, Gosselin Aff., Ex. M; D.I. 159 at 4.

[6]  D.I. 117, Gosselin Aff., Ex. A at 56 (Rucker testifying that "[Aery] told me that it was $105,000 I would get because they were going to sell the policy"); *id.* at 59 (Rucker testifying that "I bought it on the basis that [Aery] said, 'We're going to sell it in three weeks' or something."). *See also* D.I. 117, Gosselin Aff., Ex. D at 174 (Aery testifying that "I knew that we were selling–[Rucker] had every intention of selling the policy and it was a solid deal.").

[7]  *See* D.I. 117, Gosselin Aff., Ex. D at 174 (Aery testifying to an understanding with Rucker to sell the Policy); D.I. 117, Gosselin Aff., Ex. A at 59 (Rucker testifying that "[t]here was no–nothing said about my keeping [the Policy]. I couldn't afford it, I mean there's no question about it, and that was that.").

[8]  *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990) (citations omitted).

[9]  *BP Amoco Chem. Co. v. Sun Oil Co.*, 200 F. Supp. 2d 429, 432 (D. Del. 2002).

[10]  *See* Del. L.R. 7.1.5; *BP Amoco*, 200 F. Supp. 2d at 432.

court should grant reargument when:  (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; or (3) the court has made an error not of reasoning but of apprehension.[11]  Reargument may also be appropriate where the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a manifest injustice.[12]  But reargument should not be granted where it would merely "allow wasteful repetition of arguments already briefed, considered and decided," nor should this procedural device be permitted to "allow for endless debate between the parties and the court."[13]

## IV. DISCUSSION

Insurance Trust's Motion for Reargument asserts this court's grant of summary judgment to Principal on its insurable interest claim was "based on a misapprehension

---

[11]  *E.g., Schering Corp. v. Amgen, Inc.*, 25 F. Supp. 2d 293, 295 (D. Del. 1998) (citing *Brambles*, 735 F. Supp. at 1241).

[12]  *E.g., Donald M. Durkin Contracting, Inc. v. City of Newark*, Civ. No. 04-163, 2006 WL 2724882, at *3 (D. Del. Sept. 22, 2006) (citing *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (discussing standard for motion to alter or amend a judgment under Fed. R. Civ. P. 59(e))); *see also, e.g., New Castle County v. Hartford Accident and Indem. Co.*, 933 F.2d 1162, 1176-77 (3d Cir. 1991) (stating that a motion for reargument under local rules challenging the correctness of a previously entered order is considered the "functional equivalent" of a motion under Rule 59(e)) (citations omitted).

[13]  *Brambles*, 735 F. Supp. at 1240 (citations omitted); *see also BP Amoco*, 200 F. Supp. 2d at 432 (reargument should not be granted where the movant simply "rehashes material and theories already briefed and decided," and should not be used "to supplement or enlarge the record" on which the court made its initial decision) (citations omitted).

of the standard set forth in *Paulson*[14] and adopted by *Berck*[15] after summary judgment motions in this case were fully briefed."[16]  Specifically, Insurance Trust asks this court to apply the "mutual" or "bilateral" intent standard found in those cases.[17]  Under this standard, an insurer must prove that the insured *and the eventual buyer of the policy* agreed, prior to issuance of the policy, that the insured would sell the policy to that buyer.[18]  The court sees no reason to alter its decision in this regard.

To the extent Insurance Trust's Motion implies an intervening change in controlling law warranting reargument, it necessarily fails.  Neither the Third Circuit nor the Delaware Supreme Court has addressed what constitutes a lack of insurable interest at the time of procurement.[19]  Nor, absent application of res judicata or collateral estoppel, is this court controlled by decisions of the District of Minnesota or those of other judges within this district.[20]

Insurance Trust is also incorrect to the extent it suggests this court made a decision outside the adversarial issues presented by the parties.  In its answering brief

---

[14]  *Sun Life Assurance Co. v. Paulson*, Civ. No. 07-3877, 2008 WL 451054 (D. Minn. Feb. 15, 2008).
[15]  *Sun Life Assurance Co. v. Berck*, Civ. No. 09-498, 2010 WL 2607247 (D. Del. Jun 29, 2010).
[16]  D.I. 157 at 3.
[17]  *Id.*
[18]  *See Paulson*, 2008 WL 451054, at *2; *Berck*, 2010 WL 2607247, at *6.
[19]  *See Berck*, 2010 WL 2607247, at *5.
[20]  *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior resolution of those claims does not bar reconsideration by this Court of similar contentions. The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another.") (internal quotations and citations omitted); *see also id.* at n.7 (collecting supporting cases).

opposing Principal's motion for summary judgment, Insurance Trust cited *Paulson* to support applicability of the same bilateral intent standard now at issue.[21]  Principal responded to this argument in its reply brief, maintaining no insurable interest existed even under that standard.[22]

The Trust's most clearly stated ground for reargument–that the court's order was based on an error not of reasoning but of apprehension–is equally unconvincing.  As mentioned above, the parties' summary judgment briefing clearly directed this court to *Paulson* and the bilateral intent requirement found therein.  The court examined this opinion as well as other cases considering such a requirement, including *Berck* and similar recent decisions interpreting Delaware insurable interest law.  The court's citation to these decisions in its opinion demonstrates its apprehension, and ultimate rejection, of such a requirement.[23]  At bottom, then, Insurance Trust's true objection is to this court's legal reasoning, to its interpretation and application of *Paulson* and *Berck*.  Objections of this sort, however, are for appellate courts to evaluate, and have no place in a motion for reargument.[24]  Insurance Trust's motion is therefore denied.

Though unnecessary to its prior opinion or to dispose of this motion, the court will further explain its reasoning concerning bilateral intent for the benefit of the parties and

---

[21] D.I. 133 at 14-15.

[22] D.I. 140 at 3-4.

[23] *See* D.I. 155 at 10 n.59 (citing *Berck* and *Lincoln Nat'l Life Ins. Co. v. Joseph Schlanger 2006 Ins. Trust*, Civ. No. 09-506, 2010 WL 2898315 (D. Del. July 20, 2010), both of which appear to have applied the *Paulson* bilateral intent requirement).

[24] *See Brambles*, 735 F. Supp. at 1240 ("[R]eargument and reconsideration requests are not a substitute for an appeal from a final judgment."); *Schering Corp. v. Amgen Inc.*, 25 F. Supp. 2d 293, 296 (D. Del. 1998) ("To the extent [movant] disagrees with the Court's reasoning . . . its remedy lies with the . . . Court of Appeals.").

the record.  In researching this issue, the court found little support for *Paulson's* blanket proclamation (and *Berck's* alleged affirmation) that "the mutual intent of the insured *and the third party [purchaser]* to avoid the prohibition on wagering contracts *determines* the existence of . . . a scheme, purpose, or agreement [to evade the law against wagering contracts]."[25]  Rather, this court's examination of *Paulson* and its cited sources suggests that a preconceived agreement between the insured and the ultimate purchaser is not required to invalidate a policy for lack of insurable interest.  While courts may place particular emphasis on such agreements, other factors (including which party paid the policy premiums, how long the insured retained the policy before assigning it, and the adequacy of any consideration paid by the assignee) are relevant to this determination as well.[26]  In any event, as discussed at some length in the court's summary judgment opinion, the overarching policy behind the insurable interest requirement is to invalidate life insurance policies taken out as "pure wagers,"[27] and in cases of assignment, to

---

[25]  *Paulson,* 2008 WL 451054, at *2 (emphasis added).

[26]  *See* 44 AM. JUR. 2D *Insurance* § 1001 ("If a policy is taken out with the intention of immediately assigning it to one having no insurable interest in the life of the insured . . . the assignment is void."); *id.* (noting that whether the insured paid the policy premiums and whether adequate consideration was paid by the assignee to the insured also aid in determining the character of the transaction); 44 C.J.S. *Insurance* § 353 (citing authority supporting invalidition of assignment to one lacking insurable interest where assignee agrees to pay all premiums); *Life Product Clearing v. Angel*, 530 F. Supp. 2d at 646, 654 (S.D.N.Y. 2008) ("Courts consider factors such as whether the insured paid premiums *and the length of time the insured held the policy before assigning it* when deciding whether an arrangement is simply a sham transaction . . . [or] a genuine, good-faith assignment.") (emphasis added) (citation omitted) (cited in *Berck*).

[27]  *Grigsby v. Russell*, 222 U.S. 149, 154-55 (1911) (explaining that an insurance policy lacking an insurable interest at inception merely serves as cover for a "pure wager," which contradicts the purpose of life insurance by giving the policyholder "a sinister counter interest in having the life come to an end").

distinguish transactions "in which a person having an interest lends himself to one without any, as a cloak to what is, in its inception, a wager, [from] those where an honest contract is sold in good faith."[28]

The danger in *requiring* preconceived agreements between the insured and the ultimate purchaser of a policy as proof against insurable interest is evident on the facts of this case.  Here, it is undisputed that Rucker had no interest in obtaining a life insurance policy other than quickly assigning it to another for profit.  Nor is there any question that Rucker and Aery had a preconceived agreement to effect such an assignment as quickly as possible.  Rucker thus clearly lent himself to the secondary life insurance market (no participant of which had an insurable interest in his life) as a cloak to what was, in its inception, a wager.  Yet following the bilateral intent requirement as laid out in *Paulson* and *Berck*, this court would be constrained to uphold the assignment–not because Rucker applied for the policy in good faith (he did not), not because there was no agreement with a third party to evade the law against wagering contracts (there was), but because Rucker's preconceived agreement was with *a middleman* and not the final purchaser.  The court has searched *Paulson's* and *Berck's* citations in vain for justification as to why the presence of this middleman should alter its

---

[28] *Id.* at 156; *accord, e.g., Warnock v. Davis*, 104 U.S. 775, 779 (1881) (stating that such wagering contracts are, "independently of any statute on the subject, condemned, as being against public policy"); *Baltimore Life Ins. Co. v. Floyd*, 91 A. 653, 656 (Del. 1914) ("[I]nsurance procured upon a life by one *or in favor of one* under circumstances of speculation or hazard amounts to a wager contract and is therefore void, upon the theory that it contravenes public policy.") (emphasis added); *cf. Bankers' Reserve Life Co. v. Matthews*, 39 F.2d 528 (8th Cir. 1930) (upholding jury finding of valid insurable interest on grounds that insured did not contemplate assignment at the time the policy became effective) (cited in *Paulson*).

8

analysis.[29]

In addition to directing the wrong result in cases like this, the *Paulson* and *Berck* bilateral intent analysis provides a blueprint for making otherwise impermissible transactions unassailable.  If this court applied the rule advocated by Insurance Trust, insureds and third-party co-conspirators could acquire policies and simply wait until they are issued before choosing from among a host of willing buyers.  Indeed, this strategy appears consistent with the active market for these policies, where identifying a buyer after the fact may yield the highest price.

In short, this transaction was no less a gamble because Rucker did not meet his policy's purchaser before applying for it.  To hold otherwise is, in this court's view, to elevate the form of the agreement over the substance of the scheme and the policy of Delaware's insurable interest statute.

---

[29]  *See Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 796 (6th Cir. 2009) (finding policy voidable at insurer's option where it was alleged that viators "knew at the time they purchased their policies that they were going to assign the policies to an entity that had no direct interest in their continued life") (citations omitted); *Bankers' Reserve*, 39 F.2d at 529 ("The crux is whether the policy was a wagering contract at the time it became effective as a contract.  If, at that time, such assignment was contemplated by the insured, it is a wagering contract, otherwise it is not."); *Angel*, 530 F. Supp. 2d at 655-56 (denying purchaser's motion for judgment on the pleadings where it was alleged that insured "did not procure the Policy on his own initiative" and "always intended . . . to transfer his beneficial interest in the Policy to an investor") (internal quotations omitted); *id.* at 656 (rejecting purchaser's argument "that single contractual steps in a sequence must be considered as separate legal transactions and not as a single, sham transaction").

9

## V.  CONCLUSION AND ORDER

For the reasons above, IT IS ORDERED that Insurance Trust's Motion for

Reargument (D.I. 157) is DENIED.


Date: _____Nov. 1, 2010_____          _____/s/ Mary Pat Thynge_____
                                                         United States Magistrate Judge