IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PRINCIPAL LIFE INSURANCE          :
COMPANY,                          :
                                  :
            Plaintiff,            :
                                  :
      v.                          :    C. A. No. 08-488-MPT
                                  :
LAWRENCE RUCKER 2007              :
INSURANCE TRUST,                  :
                                  :
            Defendant.            :

## MEMORANDUM ORDER

## I.    INTRODUCTION

On August 8, 2008, Principal Life Insurance Company ("Principal") filed the

present action against Christiana Bank and Trust Company ("Christiana Bank"), as

trustee for the Lawrence Rucker 2007 Insurance Trust ("Insurance Trust").[1]  On

September 17, 2008, the parties entered a stipulation substituting Insurance Trust as

defendant in lieu of Christiana Bank.[2]  Principal subsequently amended its complaint

twice.[3]  Principal alleged in its second amended complain that a life insurance policy

("Policy") issued on the life of Lawrence Rucker ("Rucker") was void or voidable

because of a lack of an insurable interest and/or material misrepresentations.[4]  On June

4, 2009, Insurance Trust answered the Second Amended Complaint.[5]  Insurance Trust

---

[1] D.I. 1 at 1.  On September 3, 2009 the parties consented to the jurisdiction of Magistrate Judge Mary Pat Thynge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  D.I. 79.

[2] D.I. 8.

[3] D.I. 9; D.I. 44.  The Second Amended Complaint was filed on April 24, 2009.

[4] D.I. 44 at ¶ 1.

[5] D.I. 57.  Principal answered the counterclaims and raised affirmative defenses to the counterclaims on December 31, 2009.  See D.I. 97.

argued that:  (1) Principal waived rescission through ratification of the Policy; (2) an insurable interest existed at the Policy's inception; and (3) any material misrepresentations were either known to Principal or made by its agents.[6]  On May 4, 2010, the parties filed cross-motions for summary judgment.[7]  On August 30, 2010, the court denied Insurance Trust's motion and granted Principal's motion on the issue of insurable interest only.[8]  On September 13, 2010, Insurance Trust filed a motion for reargument of the court's August 30, 2010 memorandum opinion and order.[9]  The court denied that motion in a memorandum order dated November 1, 2010.[10]  On that same date, the court ordered a teleconference to be held on November 9, 2010 to discuss the status of the case.[11]  As a result of that teleconference, the court ordered further briefing, in a summary judgment format, regarding Principal's argument that Insurance Trust is equitably estopped from seeking a return of the premiums paid on the Policy.[12] The parties submitted simultaneous opening and answering briefs on November 22, 2010 and December 3, 2010, respectively.[13]  Oral argument was held on December 15, 2010.[14]  This memorandum order sets forth the court's determination of the issues raised in that briefing.

## II.   BACKGROUND

Principal alleged that the Policy was obtained illegally through a stranger

---

[6] D.I. 57 at 5-8.
[7] D.I. 116; D.I. 118.
[8] *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 735 F. Supp. 2d 130 (D. Del. 2010); D.I. 155 (Memorandum Opinion); D.I. 156 (Order).
[9] D.I. 157.
[10] D.I. 167.
[11] D.I. 168.
[12] D.I. 169 (Order); D.I. 170 (Teleconference Tr. Nov. 9, 2010).
[13] D.I. 172; D.I. 174; D.I. 179; D.I. 180.
[14] D.I. 182 (Oral Arg. Hr'g Tr. Dec. 15, 2010).

originated life insurance ("STOLI") scheme.[15]  Such schemes are frequently used to gamble on the lives of strangers and profit from their deaths.[16]  Principal argued that a multi-layer trust arrangement was used to circumvent insurable interest requirements.[17]

Rucker began the process of obtaining life insurance through interactions with Wayne Aery ("Aery").[18]  Aery worked in conjunction with Brad Friedman ("Friedman"), a purported agent of Principal.[19]  Aery and Friedman also do business under the brokerage firm Lextor Financial.[20]  Aery assisted Rucker in completing the application ("Application") for life insurance.[21]

Prior to executing the Application, multiple trusts were created.  On or about August 14, 2007, the Lawrence Rucker 2007 Family Trust ("Family Trust") was established.[22]  The Family Trust Agreement listed Rucker as settlor, Christiana Bank as trustee, and Rucker as beneficiary.[23]  Additionally, on or about August 15, 2007, the Insurance Trust was established.[24]  The Insurance Trust Agreement listed Rucker as settlor, Christiana Bank as trustee, and the Family Trust as beneficiary.[25]  The GIII Accumulation Trust ("GIII Trust") was also formed.[26]

---

[15] D.I. 117 at 2.
[16] *Id.*
[17] *Id.* at 2-3.
[18] *Id.* at 7; D.I. 133 at 2.
[19] D.I. 117 at 7; D.I. 133 at 3.
[20] D.I. 117 at 7 (stating that both did business under Lextor Financial and/or Lextor Insurance Services); D.I. 117, Gosselin Aff., Ex. D at 15-16 (Aery admitting that Lextor Financial is Friedman's corporation and that he is an independent contractor of Lextor).
[21] D.I. 117 at 8; D.I. 133 at 3.
[22] D.I. 117, Gosselin Aff., Ex. G at 14.
[23] *Id.* at 1.
[24] D.I. 117, Gosselin Aff., Ex. B at 16.
[25] *Id.* at 1.
[26] D.I. 121, Strother Aff., Ex. 9.

The Application was executed on August 16, 2007.[27]  It required a number of
disclosures, two of which were particularly relevant.  Question 6(a) asked whether the
applicant had an intention that "any group of investors will obtain any right, title, or
interest in any policy issued of the life of the Proposed Insured(s) . . . ."  Question 6(b)
asked whether the applicant would "borrow money to pay the premiums for this policy or
have someone else pay these premiums . . . in return for an assignment of policy values
back to them . . . ."  Both questions were answered in the negative.  The parties
disputed the validity of these answers.[28]

In addition to the Application, Rucker also submitted a Confidential Financial
Statement ("CFS").[29]  The CFS represented Rucker's yearly income at $425,000 and his
net worth at $4.85 million.[30]  Rucker's actual income was approximately $120,000, and
his net worth significantly less than represented.[31]  Though the origin of this false
information is unclear, the parties agree it is invalid and not directly attributable to
Rucker.[32]

On September 26, 2007, Principal issued a Flexible Premium Universal Life
Insurance Policy in the amount of $3.5 million.[33]  The Policy named Insurance Trust as

---

[27] D.I. 117, Halder Decl., Ex. T.
[28] *Compare* D.I. 117 at 24 (stating Principal's belief that the answer to Question 6(a) is false
because Rucker always intended to sell the Policy) *and id.* at 25 (noting Principal's belief that answer to
Question 6(b) is false because Rucker did not, and could not, pay premiums) *with* D.I. 133 at 22
(indicating Insurance Trust's belief that answer to Question 6(a) is true because Insurance Trust is still
owner of Policy) *and id.* at 21 (explaining Insurance Trust's belief that answer to Question 6(b) is true
because Rucker never assigned Policy in exchange for premiums).
[29] D.I. 117, Halder Decl., Ex. U.
[30] *Id.*
[31] D.I. 117 at 9; D.I. 133 at 4.  *See also* D.I. 117, Gosselin Aff., Ex. E; D.I. 117, Gosselin Aff., Ex.
F.
[32] D.I. 117 at 10 (noting that Rucker was not aware of false information in the CFS); D.I. 133 at 17
(stating that information in the CFS was not provided by Rucker).
[33] D.I. 117, Halder Decl., Ex. V.

4

the beneficiary.[34]  All premiums currently due were paid and all other conditions of the Policy were performed.

Shortly after issuance of the Policy, the Family Trust sold an "exclusive, undivided 100% beneficial interest" in the assets of the Insurance Trust to the GIII Trust.[35]  The GIII Trust is a Delaware statutory trust that could only purchase beneficial interests in life insurance trusts, and could only make offers to purchase such interests when instructed to do so by its beneficiary, which at the relevant time was an entity called Dariconic Limited.[36]  Although the Insurance Trust remained the named beneficiary of the Policy, the GIII Trust was the actual beneficiary and would receive all Policy proceeds according to this agreement.  The GIII Trust had no insurable interest in Rucker's life.

Principal's second amended complaint contained two counts for declaratory judgment.  Count I sought a declaration that the Policy lacked an insurable interest at inception and was, therefore, void *ab initio*.[37]  Count II sought a declaration that the Application contained certain material misrepresentations upon which Principal justifiably relied and, therefore, the Policy was void or voidable.[38]  The prayer for relief included requests for declarations:  that the Policy was void or voidable due to a lack of insurable interest at the inception of the Policy; that the Policy was void or voidable due to material misrepresentations in the application; and, whether Principal may retain some or all of the premiums paid on the Policy and/or recover damages as an off-set to

---

[34] *Id.*
[35] D.I. 117, Gosselin Aff., Ex. L.
[36] D.I. 117, Gosselin Aff., Ex. M; D.I. 159 at 4.
[37] D.I. 44 at ¶¶ 34-37.
[38] D.I. 44 at ¶¶ 38-42.

the costs and expenses Principal incurred as a result of the issuance of the policy.[39]

In its August 30, 2010 opinion, the court granted Principal's motion for summary judgment on Count I finding that the facts recited therein "clearly demonstrate a 'scheme or plan' to evade the law against wagering contracts.  The Policy therefore lacked an insurable interest at inception, and is void as contrary to public policy and Delaware's insurable interest statute."[40]

With regard to Count II, the court denied Principal's motion for summary judgment.  The court first determined that the parties "clearly intended the CFS to be part of the Application."[41]  The court also determined that the existence and materiality of misrepresentations in the CFS were undisputed.[42]  An issue existed, however, as to which party those misrepresentations were attributable.[43]  Insurance Trust argued "that Friedman was both the source of the misrepresentations and an agent of Principal, leaving Principal responsible for the content of the CFS."[44]  Principal countered that "Rucker provided financial information to Aery, who subsequently related different information to Friedman" and, therefore, the "misrepresentations arose with Aery."[45] Alternatively, Principal argued that even if the misrepresentations were attributable to Friedman, Principal was not responsible for those misrepresentations because Friedman was "either not Principal's agent or was acting outside the scope of his

---

[39] D.I. 44 at 8 (Relief Requested at ¶¶ A, B, and C).
[40] 735 F. Supp. 2d 130, 140 (D. Del. 2010); *see id.* at 137-140 (discussing the court's reasoning for granting summary judgment as to Count I).
[41] *Id.* at 141-42.
[42] *Id.* at 142.
[43] *Id.*
[44] *Id.*
[45] *Id.*

authority and in his own self-interest in making them."[46]   The court determined that

genuine issues of material fact prevented summary judgment concerning the CFS

because it was unclear "whether the misrepresentations arose with Aery after speaking

with Rucker or with Friedman after speaking to Aery."[47]   The court also determined that

genuine issues of fact existed as "to whether Rucker answered Application questions

6(1) and 6(b) accurately, and if not, whether any misrepresentations were knowingly

made."[48]

## III.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), a court is to enter summary

judgment only when the record demonstrates that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law.  In deciding

a motion for summary judgment, a court's role is not to weigh the evidence or to

determine the truth of the matters asserted, but to determine whether there is a genuine

---

[46] *Id.*

[47] *Id.* at 143.  Although that factual issue alone prohibited summary judgment, the court noted that "even if these misrepresentations plainly arose with Aery, factual questions would remain concerning whether Aery was acting as Rucker's agent for purposes of completing the CFS.  Similarly, if they arose with Friedman, factual questions would remain as to whether Friedman was acting as Principal's agent in this regard.  Because the court cannot say that the misrepresentations in the CFS are attributable to either party as a matter of law, summary judgment is denied on this issue."  *Id.* (footnotes omitted).

[48] *Id.*  With regard to question 6(b), dealing with the intent to "borrow  money to pay the premiums . . . or have someone else pay . . . in return for an assignment of policy values," answered in the negative, Insurance Trust maintained the response was accurate because Rucker did not assign the Policy rights in exchange for premiums.  The court noted that although "the parties agree that money was borrowed to pay the premium payments, they dispute whether borrowing such funds was *in exchange for* assignment of the Policy.  This unresolved issue of material fact precludes summary judgment on question 6(b).  *Id.* (emphasis in original) (footnote omitted).  With regard to question 6(a), asking:  "[i]s there an intention that any group of investors will obtain any right, title, or interest in any policy issued on the life of the Proposed Insured(s) as a result of this application," the court found that the negative response misrepresented Rucker's intent at the time the Policy was issued.  Despite that finding, a genuine issue of material fact remained "concerning whether Rucker made this misrepresentation knowingly."  *Id.* at 143-44.  The record evidence led the court to conclude that "[t]his genuine dispute over whether Rucker appreciated the import of Application question 6(a) at the time it was answered renders summary judgment on that question inappropriate."  *Id.* at 144-45.

issue of fact for trial.[49]  In so doing, the court must view all facts and draw all reasonable

inferences in favor of the non-movant, take as true all allegations of the non-movant that

conflict with those of the movant, and resolve all doubts against the movant.[50]  The court

also must treat direct and circumstantial evidence alike.[51]

This standard does not change merely because there are cross-motions for

summary judgment.[52]  Cross-motions for summary judgment

> are no more than a claim by each side that it alone is entitled to summary
> judgment, and the making of such inherently contradictory claims does not
> constitute an agreement that if one is rejected the other is necessarily
> justified or that the losing party waives judicial consideration and
> determination whether genuine issues of material fact exist.[53]

Moreover, "[t]he filing of cross-motions for summary judgment does not require the court

to grant summary judgment for either party."[54]

## IV.    DISCUSSION

The issue before the court is whether, in light of this court's summary judgment

ruling that the Policy issued by Principal is void, Principal is now required to return the

premiums paid for the Policy to Insurance Trust and/or whether, as Principal contends,

"equitable estoppel" allows Principal to retain some or all of the premiums.  Principal

seeks "a declaratory judgment that Insurance Trust is estopped from seeking a return of

premiums paid in connection with the Policy based on the Court's finding that the Policy

---

[49] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[50] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985).
[51] *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94 (2003).
[52] *Appleman's v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).
[53] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).
[54] *Krups v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).

was procured by Insurance Trust as part of a fraudulent scheme to evade the law."[55]
Principal argues that, "[a]lthough limited, the Court's finding of fraud is sufficient to
warrant a further declaration that, as a matter of law, the Insurance Trust is estopped
from seeking a return of the premiums paid in connection with the Policy."[56]

Insurance Trust contends that:  "(1) Delaware law requires that an insurer who
succeeds in having a policy declared void–as Principal has done here–refund all
premiums paid under the Policy, and (2) the doctrine of equitable estoppel does not
permit Principal to avoid this explicit requirement of Delaware law."[57]

The court first notes Principal's argument that Insurance Trust is equitably
estopped from seeking a return of premiums paid in connection with the policy in light of
the court's summary judgment opinion must fail.  At oral argument, Principal argued
"[i]t's a case of a Trust, in this case, a Trust that has violated the law of Delaware.  As
the court said, this Trust scheme was an effort to subvert the law of Delaware."[58]  The
court did conclude that the facts "clearly demonstrate a 'scheme or plan' to evade the
law against wagering contract.  The Policy therefore lacked an insurable interest at
inception as contrary to public policy and Delaware's insurable interest statute."[59]
Importantly, as Insurance Trust brought up during oral argument, the court's summary
judgment opinion did not make any finding of fraudulent activity on the part of defendant
Insurance Trust, nor was it asked to.  Principal acknowledged this fact at oral

---

[55] D.I. 174 at 1.
[56] *Id.*
[57] D.I. 172 at 1.
[58] D.I. 182 at 11:14-16.
[59] *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 735 F. Supp. 2d 130, 140 (D. Del. 2010).

argument.[60]  Moreover, Principal agreed that in seeking this equitable remedy it is

required to come to the court with clean hands.[61]  The court reminded Principal that the

court's summary judgment opinion found that there were questions of fact as to whether

certain alleged misrepresentations were attributable to agents of Principal, thus there

was no finding at this stage that Principal came to the court with clean hands; which

Principal conceded was a "fair point.  And that is still out there."[62]  Consequently, the

court determines that Insurance Trust is not equitably estopped from seeking a return of

premiums paid on the Policy.

At oral argument, Insurance Trust primarily relied on two cases from this court in

support of its argument that, as a result of the court determining that the Policy was void

*ab initio*, Principal must return all of the premiums it received:  *Lincoln National Life Ins.

Co. v. Snyder*,[63] and *Sun Life Assurance Co. of Canada v. Berck*.[64]  These cases

support Insurance Trust's argument that Principal may not seek to have the Policy

---

[60] D.I. 182 at 54:12-22 ("[PRINCIPAL]:  What we said, and there are all kinds of conduct, very specific conduct about the misstatements and what the Trust did in putting this policy in force.  And we said that as a result of that conduct, we're entitled to a declaration that the policy is void ab initio and also we plead that we should be entitled to damages.  THE COURT:  I don't think what the Trust necessarily did was put in front of me on the motion for summary judgment . . . .  [PRINCIPAL]:  On the Motion for Summary Judgment it was not."); *see also id.* at 49:4-14 ("[INSURANCE TRUST]:  [T]he idea that you . . . can seek damages based on the Trustee's conduct?  [The Court's] finding on insurable interest doesn't have anything to do . . . with any conduct by the Trust or by the Trustee. . . .  On the misrepresentation claim . . . [the Court] found issues of fact regarding whether Mr. Rucker bore some responsibility for misrepresentation in question or whether Principal[']s own agents did, not any issue of fact as to whether the Trustee did.  THE COURT:  That issue was not put in front of [the court] on the issue for Summary Judgment.").

[61] *Id.* at 12:1-4.

[62] *Id.* at 12:5-25; *id.* at 12:10- (There is "the issue left out there as to whether those agents committed fraud or misrepresentation . . . .  [The court] made a finding that there were issues of fact out there as to who was responsible for what. . . .  There has been no evidence at this stage to show that [Principal has] clean hands, that these individuals who were involved in the transaction, particularly, the two insurance individuals, . . . handled this appropriately.  And the issue remains whether either of those . . . individuals could be considered to be your agent.").

[63] 722 F. Supp. 2d 522 (D. Del. 2010).

[64] 719 F. Supp. 2d 410 (D. Del. 2010).

declared void *ab initio*, as it has, and also retain premiums obtained from that policy. On the other hand, the cases support Principal's argument that it may, potentially, recover damages for expenses incurred as a result of the issuance of the Policy.

In *Berck*, the plaintiff alleged that an insurance policy was fraudulently procured on the life of Daniel Berman ("the Berman Policy") which purportedly lacked any insurable interest.[65]  The plaintiff sought declaratory judgment that the policy was void *ab initio*, a retainment of some or all of the premiums paid under the policy, and damages.[66]  The plaintiff argued "Delaware law does not require an insurer to return premiums paid thereon in order to have a policy declared void, while [the] defendant assert[ed] that an election of remedies prevents an insurer from both rescinding a policy and retaining the premiums."[67]  The court agreed with defendant, noting "[t]his court previously held that rescission of benefit increases on a life insurance policy requires the insurer to refund premiums."[68]  The court noted that cases relied upon by the plaintiff as purportedly supporting retainment of premiums on a rescinded policy actually "allowed damages to be awarded, not premiums to be retained."[69]  The court observed that "[i]f an insurance company could retain premiums while also obtaining rescission of

---

[65] *Id.* at 411.
[66] *Id.*
[67] *Id.* at 418.
[68] *Id.* (citing *Oglesby v. Penn Mut. Life Ins. Co.*, 877 F. Supp. 872, 890 (D. Del. 1994)); *see also id.* (noting that "[o]ther Delaware courts have also held that rescission is an equity claim that requires all parties to be returned to the status quo" (citing *Strassburger v. Earley*, 752 A.2d 557, 578 (Del. Ch. 2000) (returning the parties "to the position they occupied before the challenged transaction") & *Sannini v. Casscells*, 401 A.2d 927, 931 (Del. 1979) (finding that election of remedies in equity precludes inconsistent judgment)).

[69] *Id.* (citing *Creative Research Mfg. v. Advanced Bio-Delivery LLC*, Civ. No. 1211-N, 2007 WL 286735, at *10 (Del. Ch. Jan. 30, 2007) (awarding "operating costs and out-of-pocket expenses" incurred by plaintiff in equitable rescission action) & *Martin Network Dealership, Inc. v. Grube*, Civ. No. 97-11-064, 1998 WL 1557485, at *4 (Del. Ct. Com. Pl. Dec. 22, 1998) (allowing a plaintiff to be awarded "money or other property of which it has been deprived")).

11

a policy, it would have the undesirable effect of incentivizing insurance companies to bring rescission suits as late as possible, as they continue to collect premiums at no actual risk."[70]  The court concluded that "although plaintiff may properly seek damages for expenses incurred as a result of defendant's alleged behavior, the court dismisses plaintiff's claim seeking retainment of premiums in light of the fact that it also seeks to rescind the Berman Policy.  *In an equitable action such as this, plaintiff may not have it both ways.*"[71]

Similarly, the *Snyder* plaintiff alleged that defendants fraudulently procured an insurance policy on the life of Harry Wisner ("the Wisner Policy").[72]  The plaintiff sought declaratory judgment that the Wisner policy:  (1) was voidable or void *ab initio* for lack of insurable interest; (2) was illegally procured; and, (3) was procured through material misrepresentation.  The plaintiff also sought damages and a retainment of some or all of the premiums paid under the Wisner policy.[73]  The defendant argued, inter alia, that the Wisner Policy was not void or voidable due to lack of insurable interest and that the plaintiff could not simultaneously seek to rescind the contract and seek damages on the same contract.[74]

There, as in *Berck*, plaintiff argued that in the event the Wisner Policy was rescinded for being void or void *ab initio*, it was entitled to retain some or all of the

---

[70] *Id.* at 418-19.
[71] *Id.* at 419 (emphasis added) (footnote omitted).  There, the plaintiff had sought "an award of damages for expending money and resources in connection with 'the costs of underwriting, issuance, payment, commissions, administration, service, and investigations associated with the Berman policy.'" *Id.* at 419 n.12.
[72] *Snyder*, 722 F. Supp. 2d at 549.
[73] *Id.*
[74] *Id.* at 555.

12

premiums it obtained from the policy because Delaware law purportedly does not required an insurer to return premiums paid thereon in order to have a policy declared void. Defendant maintained that an election of remedies prevented an insurer from both rescinding a policy and retaining the premiums. The court again agreed with the defendants,[75] citing Delaware law that rescission of benefit increases on a life insurance policy requires the insurer to refund premiums. The court also noted that the cases relied upon by the plaintiff did not support a contrary conclusion but were instances where courts allowed damages to be awarded, not premiums to be retained.[76] The court reiterated that "although plaintiff may properly seek damages for expenses incurred as a result of the Trustee's alleged conduct, the court dismisses plaintiff's claim seeking retainment of premiums in light of the fact that it also seeks to rescind the Wisner Policy. *In an equitable action such as this, plaintiff may not have it both ways.*[77]

Thus it is clear from *Berck* and *Snyder*, that under Delaware law Principal's argument that it may retain premiums received on the Policy that this court held to be void *ab initio* for lack of an insurable interest at inception necessarily fails.

Conversely, those cases also demonstrate that Principal may seek damages for expenses incurred as in connection with issuing the Policy. As here, the operative complaints in both *Berck* and *Snyder* sought declaratory judgment that the policy-at-

---

[75] *Snyder*, 722 F. Supp. 2d at 564.
[76] *Snyder*, 722 F. Supp. 2d at 564-64.
[77] *Snyder*, 722 F. Supp. 2d at 565 (emphasis added) (footnotes omitted). The court stated that "[p]ursuant to this reasoning, the court also denies the motion to dismiss regarding the Trustee's argument that plaintiff *cannot simultaneously* seek to rescind the contract and seek damages on that same contract." *Id.* at 565 n.15 (emphasis added); *id.* at 565 n.16 ("Plaintiff may not simultaneously seek rescission of the policy **and** retainment of the premiums. In the event the Wisner Policy is held to be valid, plaintiff may retain the premiums pursuant to the contract terms.") (emphasis in original).

13

issue was void for failure of an insurable interest at the time of procurement and/or void

due to material misrepresentations.[78]  Insurance Trust attempts, in part, to distinguish

the complaints in those cases as reciting certain damage expenses within the body of

specific counts for declaratory relief.  For instance, the *Berck* amended complaint

recites:

> As a result of the actions of [certain individuals or entities] leading to the
> procurement of the Berman Policy, which was unsupported at inception by
> any legally cognizable insurable interest, Sun Life has been forced to
> expend money and resources including, but not limited to, the costs of
> underwriting, issuance, payment of commissions, administration, service,
> and investigations associated with the Berman Policy.[79]

The *Snyder* complaint is less specific but, similarly, recites:

> [D]ue to the fraudulent nature of the STOLI transaction, Lincoln is entitled
> to a judicial declaration that the Defendants and/or others are estopped
> from seeking a return of the premiums paid in connection with the Wisner
> Policy.  To the extent that the Defendants and/or others are not estopped
> from seeking a return of premiums, Lincoln alternatively seeks equitable
> relief in the form of a declaration that it is entitled to offset any return of
> premiums by the costs it incurred in connection with the Wisner Policy.[80]

As discussed above, the respective plaintiffs could not have it both ways, i.e., seek

retainment of premiums and also seek to rescind the respective policies.  Each was,

however, permitted to seek damages for expenses incurred as a result of the issuance

of the policy-at-issue.  It is true that Principal's second amended complaint does not

---

[78] *See* 09-498-SLR, D.I. 8 (*Berck* Amended Complaint) at ¶ 43 ("Sun Life is entitled to a judicial declaration, in view of the Berman Policy's apparent origin, that the Berman Policy was unsupported at the time of its procurement by any legally cognizable insurable interest and is void *ab initio.*"); 09-888-SLR, D.I. 1 (*Snyder* Complaint) at ¶ 75 ("Lincoln is entitled to a judicial declaration that the [Wisner] Policy lacked an insurable interest at inception and is therefore *ab initio* or voidable."); 09-888-SLR, D.I. 1 at ¶ 83 ("Lincoln is entitled to a judicial declaration that the Wisner Policy was procured through material misrepresentations and is therefore void *ab initio* or voidable.").
[79] 09-498-SLR, D.I. 8 at ¶ 44.
[80] 09-888-SLR, D.I. 1 at ¶ 83.

include language within its specific counts reciting expenses or costs incurred in connection with issuing the Policy as was set forth in the *Berck* and *Snyder* complaints. Principal, however, unambiguously requests damages in its overall prayer for relief by asking the court to "[d]eclar[e] whether Principal Life may retain some or all of the premiums paid on the Rucker Policy *and/or recover damages as an off-set to the costs and expenses Principal Life has incurred as a result of the issuance of the policy.*"[81] Under the notice pleading requirement of the Federal Rules of Civil Procedure,[82] the court determines that Principal's second amended complaint adequately raised a claim for damages.

Consequently, once the evidence establishes those individuals and/or entities responsible for the "scheme or plan" to evade the law against wagering contracts resulting in the issuance of the Policy, and that such conduct is not attributable to Principal and/or its agents, Principal may be allowed to recover damages incurred as a result of the issuance of the Policy.

## V.   CONCLUSION

For the reasons stated above, it is ORDERED, ADJUDGED, and DECREED, that:

---

[81] D.I. 44 at D.I. 44 at 8 (Relief Requested at ¶ C) (emphasis added).  *Compare* 09-498-SLR, D.I. 8 at 11 (*Berke* Relief Requested at ¶¶ B, C, and D) (requesting "B.  A declaration as to whether Sun Life may retain some or all of the premiums paid pursuant to the Berman Policy; C.  An award of compensatory damages as warranted under law; D.  An award of consequential damages as warranted under law"); 09-888-SLR, D.I. 1 at 24 (*Snyder* Relief Requested at ¶ D) (requesting that the court "declar[e] that Defendants and/or others are estopped from receiving a return of the premiums paid in connection with the Wisner Policy due [to] the fraudulent nature in which the Wisner Policy was procured or, alternatively, a declaration that Lincoln is entitled to offset any return of premiums by the costs it incurred in connection with the Wisner Policy").

[82] *See* Fed. R. Civ. P. 8 ("(a)  Claim for Relief.  A pleading that states a claim for relief must contain; . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.").

(1)   Insurance Trust is not equitably estopped from seeking the return of premiums paid on the Policy.

(2)   Principal may not retain premiums paid on the Policy.

(3)   Principal has adequately raised a claim for damages.


March 30, 2011                              /s/ Mary Pat Thynge
Wilmington, Delaware                        UNITED STATES MAGISTRATE JUDGE

16